THE GENERAL AUTO SALES COMPANY *v.* CAPITOL
MOTOR CAR COMPANY, INC., ET AL.

HOFFMAN MOTOR COMPANY, INC., *v.* CAPITOL MOTOR
CAR COMPANY, INC., ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and CORNELL, J.

Argued October 10—decided December 21, 1944.

*Benjamin Slade,* with whom were *Emanuel H. Waldman* and *John W. Joy,* for the appellants (plaintiffs).

*Hugh M. Alcorn,* for the appellees (defendants).

JENNINGS, J.   The plaintiffs are dealers in automobiles.   The named defendant, hereinafter referred to as the defendant, is a so-called direct dealer or distributor.   The complaints are in three counts claim-

ing (1) damages for overcharges in sales by the defendant to the plaintiffs; (2) unlawful solicitation of the plaintiffs' customers to the detriment of their business; (3) a refusal to sell to the plaintiffs in carload lots, to their damage. The prayers for relief also claim an accounting. The answers consisted of a general denial, special defenses and, in the Hoffman case only, a counterclaim. Since the defendant rested at the close of the plaintiffs' case, the counterclaim may be disregarded. The special defenses are of no importance in view of the result. The two cases did not differ in any respect materially affecting the result. They were tried together and the nature of the legal issues is such that they can be discussed together.

The assignments of error necessitate an examination of the evidence to determine whether it requires what amounts substantially to a substitution of the plaintiffs' draft-finding for the finding, which supports the claim of the defendant. This examination has been made and such corrections as the evidence requires are contained in the following statement. The dominating personalities in the plaintiff companies were shrewd and experienced business men, thoroughly familiar with the automobile sales business. The management was the same throughout the transactions here under consideration. The plaintiffs were dealers who purchased automobiles for resale from a direct dealer or distributor. The latter is an intermediate party between the manufacturer and the dealer. The defendant was sole representative and direct dealer for the Dodge and Chrysler corporations for Hartford and other counties in Connecticut. The plaintiffs could purchase new Dodge and Chrysler (Plymouth) cars only through the defendant.

In 1932, the General Auto Sales Company and the defendant signed a dealer agreement which purported

to give to this plaintiff the right to purchase Dodge and Plymouth cars from the defendant for resale in Hartford. This was the only agreement which fixed the prices the defendant might charge the plaintiffs. In 1933, each plaintiff signed a dealer agreement with the defendant which provided that the plaintiff "in consideration of the right to submit, as a dealer, orders to direct dealer for the products herein after mentioned" agreed "after the communication and submission of each purchase order to Direct Dealer, provided the same shall be accepted by Direct Dealer," to comply with and perform all the terms and conditions thereafter set forth. In 1934 and 1937 the General Auto Sales Company, and in 1934, 1935, 1936 and 1937 the Hoffman Motor Company, signed dealer agreements with the defendant which differed from those signed in 1933 in form but not in substance. All of the instruments signed between 1933 and 1937 inclusive contained general mutual releases.

In 1938, dealer agreements were signed by each of the plaintiffs and defendant. These differed from those just described in omitting the release clause and contained the following new provision: "(3) Direct Dealer will from time to time advise Dealer of the prices of the vehicles and parts and accessories he buys from Direct Dealer, and will furnish Schedules of Discounts and Terms of Purchase to Dealer." All of the agreements were rather long and involved. They contained the provisions usual in such contracts that the entire contract was embraced therein and that addenda must be duly executed, and they regulated their termination in detail. No written instruments other than those described were executed by the parties.

The plaintiffs purchased Dodge and Plymouth cars from the defendant during the period covered by the dealer agreements, to be resold by them as dealers.

These purchases were made upon invoices issued by the defendant specifying, almost without exception, one set price. This figure represented the net cost of the automobile to the plaintiffs and was paid by them to the defendant. In many instances, the invoices were made out to the finance company involved, specifying delivery to one of the plaintiffs. In these cases, the plaintiffs signed conditional sale contracts, trust receipts and notes in blank and authorized the defendant to fill in their terms. During all of this period, none of the parties observed the terms of any of the written agreements. In each sale, the plaintiffs purchased the car on the basis of the price fixed by the defendant's invoice—each purchase forming a separate and independent bargain without regard to any other agreement, oral or written, then existing between the parties. The cars were resold by the plaintiffs to their customers at prices based upon the total amount charged by the defendant for each car. They were not restricted by the defendant in any way as to how or for how much they would sell the cars. The parties treated the signing of the dealer agreements solely as evidencing the right of the plaintiffs to purchase automobiles from the defendant for resale and as a release of all then existing liabilities between the parties where that release was included in the agreements. None of the agreements imposed any obligation upon either party to buy or sell any automobiles.

Throughout the period of their dealings, the plaintiffs protested that they were being overcharged and asked for itemized accounts. In each instance they were told by the defendant that if they were dissatisfied with the terms they could cease to do business, yet the plaintiffs continued to purchase automobiles from the defendant in very large numbers, worth in the aggregate over a million and a half dollars.

The trial court concluded that the managing agents of both plaintiffs and defendant adopted and acted upon the method that each purchase of an automobile constituted a separate and complete transaction at a price fixed by the defendant and paid by the plaintiffs, and upon no other; that the releases were effective as to any claims theretofore existing; that there was no evidence to support the allegations of the second and third counts; and that the credible evidence offered by the plaintiffs was not sufficient to establish the essential allegations of the first count.

The plaintiffs have summarized their claims as follows: The prices of the cars were fixed by schedules issued by the Chrysler Corporation and furnished to both parties. The plaintiffs believed the one price in the defendant's invoices was made up in accordance with these schedules and, when they found out that it was not, they sued for the difference. The defendant maintained that the parties did not observe and were not bound by the schedules but that the prices were fixed by the invoice at the time of each sale.

The trial court found, in effect, as above pointed out, that none of the parties paid any attention to any of the provisions of either the signed dealer agreements or the schedules. The evidence supports this finding. Sales were supposed to be for cash but this course was rarely followed. Most sales were financed by finance companies and many if not most of these sales were made directly to these companies rather than to the plaintiffs. When the plaintiffs protested to the defendant that they were being overcharged and asked for itemized bills, they were always told that they would do business on the basis of the invoices rendered or their franchises would be cancelled. They accepted

the situation and continued to do business on the defendant's terms.

The dealer agreements gave the plaintiffs the right to buy cars from the defendant. This right was a valuable one. The Chrysler Corporation tried to regulate and define the respective rights and duties of the parties with meticulous care. Each party had the right to cancel the agreement, however, and the defendant used this power effectively to compel the plaintiffs to do business on the basis proposed by it or not at all. That basis is as found by the trial court. The evidence supports its conclusion. The result makes a consideration of the effect of the releases and the right to an accounting unnecessary.

All three counts of the plaintiffs' complaints are founded on the contracts as claimed by them, that is the schedules incorporated in the dealer agreements. Having failed to prove that these governed the relations of the parties, their whole case falls. The rulings on evidence were immaterial. They concerned efforts of the plaintiffs to prove their damage and a custom in the trade. In view of the conclusion reached by the trial court, this evidence could not have affected the result even if it had been admitted.

There is no error.

In this opinion the other judges concurred.